# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DANNY BRIZENDINE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-2782-JAR-GEB** |
| | ) | |
| **JENNIFER RANDALL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Stay this case (**ECF No. 11**).  On March 27, 2017, the Court conducted an in-person hearing to discuss the motion.  Plaintiff Danny Brizendine appeared in person and through counsel, Myndee M. Lee.  Defendant Jennifer Randall appeared through counsel, Patrick A. Turner.  After review of the parties' briefing and considering the arguments of counsel, the Motion to Stay is **GRANTED in part** as explained below.

## Background[1]

This is the third-filed lawsuit filed between an estranged husband and wife.  The parties lived together in the state of California for approximately five years prior to their relocation to Hutchinson, Kansas in 2006.  Although there are multiple disputed facts, it

---

[1] Unless otherwise indicated, the information recited in this section is taken from the pleadings (Compl., ECF No. 1), from the briefs regarding the Motion to Stay (ECF Nos.11, 15), and from judicially-noticed facts included in *Matter of Marriage of Brizendine*, 390 P.3d 124 (Kan. Ct. App. 2017).  The background information recited in this section should not be construed as judicial findings or factual determinations.

appears, at least from the record in the case, the following background facts are not in dispute:

During their time in Kansas, the parties purchased a commercial property ("Property") located at 201 S. Main Street in Hutchinson, Kansas, and eventually married in 2009. Then, in the summer of 2010, the couple moved back to California. Despite residing in California, the couple continued to manage the Property in Hutchinson. At some point after its purchase, ownership of the Property was transferred to a Kansas Limited Liability Company (LLC). Jennifer Randall was the managing member, and Danny Brizendine was designated as resident agent.

## Kansas Divorce Action

The parties encountered marital difficulties and separated in November 2014. Brizendine was the first to file a divorce action on September 14, 2015, in Reno County, Kansas.[2] The Reno County case was dismissed for lack of jurisdiction and that dismissal was recently upheld by the Kansas Court of Appeals.[3] The district and appellate courts found Kansas lacked jurisdiction over the matter because Brizendine was not a resident of Kansas for the requisite time frame prior to his filing of the divorce.[4]

## California Divorce Action

Before being served with the Kansas petition, and only four days after the Kansas filing, Randall filed a divorce action in the Superior Court, San Luis Obispo County,

---

[2] *Brizendine v. Randall*, 15 DM 626 (Reno Co. Dist. Ct., filed Sept. 14, 2015).
[3] *Matter of Marriage of Brizendine*, 390 P.3d 124 (Kan. Ct. App. Mar. 3, 2017) (unpublished).
[4] *Id*. at *1, *5.

California on September 18, 2015.[5]  On September 22, 2015, the California court issued

an *ex parte* temporary order, giving Randall temporary exclusive management and

control of the Hutchinson Property.  The California divorce proceeding remains active,

and according to the parties' reports at the March 27, 2017 hearing, is scheduled for trial

on April 14, 2017.[6]

**Federal Claims**

On November 27, 2016, Brizendine filed his federal Complaint against Randall,

alleging federal claims of quantum meruit and fraud related to the Hutchinson Property.

Brizendine claims the parties bought the Property together in 2006, and from 2006

through 2015, he spent thousands of hours both physically remodeling it and acting as

Property manager. He alleges Randall falsely misrepresented to him that he was investing

his labor in exchange for an equal ownership interest in the Property.  He also asserts

Randall fraudulently induced him to transfer title to the Property from their joint

ownership to the LLC, of which she is the sole member, in order to exclude him from any

financial benefit in the Property.

Randall filed a motion to dismiss the fraud claim (ECF No. 6), arguing Brizendine

failed to plead fraud with particularity under Fed. R. Civ. P. 9(b), and that motion is

currently being considered by the District Judge.  During a February 16, 2017 scheduling

---

[5] *Randall v. Brizendine*, 15FL-0626 (San Luis Obispo Co. Super. Ct., Cal., filed Sept. 18, 2015).

[6] Neither counsel in this federal case represent the parties in the California divorce case and neither were able to say, with any certainty, that the case will proceed to trial as scheduled. However, Mr. Brizendine advised the Court during the March 27, 2017 hearing that a continuance of the April trial date appears extremely likely, due to the timing of a recent subpoena of bank records.

conference, the parties initiated a contested conversation regarding a stay of this case pending resolution of the divorce action. The undersigned Magistrate Judge then stayed discovery and entered a briefing schedule, leading to the present motion (ECF No. 14).

## Defendant Randall's Motion to Stay (ECF No. 11)

Randall seeks to stay this case, pending final property division by the California domestic court. She contends the Property at the core of Brizendine's federal claims will be equitably distributed through the divorce. Once the domestic court determines the value and ultimate award of the Property (which will include any time and/or money both parties have contributed to it during their marriage), Randall argues the federal claims will become moot. Randall asserts the filing of this action, while Brizendine was fully aware the Property is subject to distribution in the divorce, amounts to forum shopping and harassment. She contends a stay of this case would avoid piecemeal litigation and duplicative costs to both parties, and impose no prejudice on Brizendine.

In opposition, Brizendine claims the California court is unable to hear either his fraud or quantum meruit claims. Most importantly, domestic law prohibits a fraud claim to be plead in, or joined with, a divorce action. Additionally, he distinguishes the value of his services—pursued in the quantum meruit claim—as separate from the value of the Property itself. Because they are distinct claims, he argues the cases are not parallel, and the Court must resolve any doubt in favor of exercising federal jurisdiction.

## Legal Standard

Whether to stay litigation is within the Court's inherent power to control its docket and rests in its sound discretion.[7]  Applying the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*,[8] a federal court analyzes multiple factors to determine whether to stay a federal case pending the outcome of parallel state court proceedings.[9]  Abstention is the exception rather than the rule, and the "pendency of an action in state court is no bar to proceedings concerning the same matter in a federal court with jurisdiction."[10]  However, the doctrine's core principle is "the avoidance of duplicative litigation," and its goal is to "preserve judicial resources" by focusing on efficiency and economy.[11]  Although the federal court is under a "virtually unflagging"[12] obligation to hear a case under its jurisdiction, the obligation "is not absolute, and it is well-established that federal courts have the power to refrain from hearing, among other things, cases which are duplicative of a pending state proceeding."[13]

---

[7]  *Universal Premium Acceptance Corp. v. Oxford Bank & Trust,* No. 02–2448–KHV, 2002 WL 31898217, at *1 (D. Kan. Dec. 10, 2002) (citing *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir.1963)).

[8] 424 U.S. 800 (1976).

[9] *Star Ins. Co. v. TLC Trucking, LLC*, No. 16-1017-JTM, 2016 WL 1435250, at *3 (D. Kan. Apr. 12, 2016) (citing *Colorado River*, 424 U.S. at 819-20).

[10] *Id*. (citing *Colorado River*, 424 U.S. at 817).

[11]  *Springer v. Thomas*, No. 15-4862-SAC, 2015 WL 2449579, at *2 (D. Kan. May 22, 2015) (quoting *Rienhardt v. Kelly,* 164 F.3d 1296, 1302 (10th Cir. 1999)).

[12]  *Id*. (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377, 1386 (2014) (quoting *Sprint Communications, Inc. v. Jacobs,* 134 S.Ct. 584, 591 (2013) (quoting *Colorado River,* 424 U.S. at 817)).

[13] *Id*. (citing *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.,* 705 F.3d 1223, 1233 (10th Cir.) (other internal citations omitted).

Before analyzing the relevant *Colorado River* factors, the court must first find the state court proceeding is parallel to the federal case.  In this context, the definition of parallel does not require the *exact* parties and issues to be present in both cases.  Rather, "the state and federal proceedings are considered parallel if '*substantially* the same parties litigate *substantially* the same issues'" in different forums.[14]  "Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action."[15]  The actions need not be identical to be parallel.[16]

Once the federal court determines the federal and state actions are parallel, it applies the *Colorado River* factors to analyze whether abstention is appropriate.  Those factors include:  (1) assumption of jurisdiction over property by either court*;* (2) relative inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the state and federal forums and progress of both cases; (5) the extent to which federal law controls the issues; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction;[17] and (7) the "vexatious or reactive nature of either the federal or the state litigation."[18]  The

---

[14] *Star Ins. Co.*, 2016 WL 1435250, at *3 (citing *United States v. City of Las Cruces*, 289 F. 3d 1170, 1182 (10th Cir. 2002)) (emphasis added); *see also Springer*, 2015 WL 2449579, at *3.

[15] *Springer*, 2015 WL 2449579, at *3 (citing *Gerbino v. Sprint Nextel Corp.,* 2013 WL 2405558 at *3 (D. Kan. May 31, 2013) (quoting *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir.2004))).

[16] *Id.*

[17] *Id.* at *4; *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 180 F. Supp. 2d 1235, 1241 (D. Kan. 2001).

[18] *Foxfield Villa Assocs., LLC v. Regnier*, 918 F. Supp. 2d 1192, 1198 (D. Kan. 2013); *D.A. Osguthorpe*, 705 F.3d at 1235 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (U.S. 1983)).

court must carefully balance these factors, but the "weight to be given to any one factor may vary greatly from case to case."[19]

## Analysis

Prior to the application of the *Colorado River* factors, the Court first analyzes whether the current case and the California divorce action are parallel. Clearly, the parties to each case are identical. Therefore, the Court must evaluate the issues presented in each action and the underlying facts supporting each. Brizendine argues his fraud and quantum meruit claims are simply unable to be joined in the underlying domestic action,[20] and the Court recognizes the distinction between the legal causes of action and the remedies available in the two cases.

However, during the motion hearing, Brizendine reluctantly conceded two questions which this Court cannot ignore. First, although certainly not the sole determinants of the divorce case, the facts underlying the purchase, improvements, and ownership of the Property will be examined in both forums. Second, Brizendine also acknowledged that, though he disagrees discovery will be "substantially similar" (as argued by Randall), due to the shared factual issues, the discovery in the two cases will overlap. His contributions to the Property—which form the basis of his quantum meruit claim—will be one element the domestic court may consider when determining how to

---

[19] *Springer,* 2015 WL 2449579, at *4 (citing *D.A. Osguthorpe*, 705 F.3d at 1234).

[20] *See* Pl.'s Mem., ECF No. 15 at 4 (citing *Sosnick v. Sosnick*, 71 Cal. App. 4th 1335, 1339, (1999); and *In re Marriage of McNeill*, 160 Cal. App. 3d 548 (Ct. App. 1984) (a civil action for fraud cannot be joined with or plead as part of a divorce action in California). *See also id*. at 5 (citing *Maglica v. Maglica*, 66 Cal. App. 4th 442, 446 (1998), *as modified on denial of reh'g* (Sept. 28, 1998) (distinguishing a quantum meruit claim from the division of marital property in a domestic action).

award the Property.   Likewise, Randall's alleged representations—the subject of the fraud claim—will be another issue examined by the divorce court to determine the Property's ultimate ownership.   Although the facts relating to the Property do not make up the entire factual background of the divorce case, there is no question the facts will be examined in both forums, and discovery on those facts will necessarily occur.

Ultimately, many of the same facts and allegations involved in the divorce action will be addressed in this case, because the same Property is a subject of each. Additionally, in the event the Property is set over to Brizendine in the divorce, his award of the Property could conceivably affect the amount of damages sought in his federal claims.   Despite the different legal claims,[21] because identical parties are litigating substantially similar factual issues in both forums, the cases are considered by this Court to be parallel.

Finding the actions parallel, the Court's next step is to consider the *Colorado River* factors.   Although Brizendine did not analyze the factors in his briefing, instead choosing to rely upon the asserted lack of parallelism between the cases, the factors were discussed at the motion hearing, and each factor is briefly addressed.

---

[21] *See Foxfield Villa Associates,* 918 F. Supp. 2d at 1197 (discussing a separate claim added to the federal action, but finding the addition of the claim does not prevent the court's finding the actions are parallel because the additional federal claim was based on many of the same facts as the state claims).

**1.    Whether either court has assumed jurisdiction over property.**

The application of this factor is generally to avoid "the generation of additional litigation" through "inconsistent dispositions of property."[22]    The parties agree the California court has assumed jurisdiction over the Property and has already made temporary orders regarding its use.  Because the California court is already considering the disposition of the Property, this factor weighs in favor of stay.

**2.    Whether the federal forum is inconvenient.**

Neither party presented arguments in their briefing regarding the convenience of the federal forum.  During the hearing, Randall's counsel admitted this factor is likely neutral, because this Court is convenient to Brizendine, since he lives in Kansas, but inconvenient to Randall, due to her residency in California.  The Court agrees, and finds the factor neutral to its analysis.

**3.    The desirability of avoiding piecemeal litigation.**

The number of cases filed by these parties in three separate jurisdictions certainly leads to an initial appearance of duplicative litigation, in some respects.  However, because the quantum meruit and fraud claims cannot be heard by the divorce court, the Court understands this may be unavoidable.  But, as discussed above, duplication of discovery and factual issues in the two cases is inevitable.  Even a minimal stay would avoid the duplication of resources for both the parties and the Court.  Because the

---

[22] *Id*. at 1198 (citing *Colorado River*, 424 U.S. at 819).

"avoidance of piecemeal litigation is an important rationale behind the *Colorado River* doctrine,"[23] this factor weighs in favor of stay.

### 4. The order in which the courts obtained jurisdiction and the progress of the two cases.

The California court obtained jurisdiction in September 2015, more than one year prior to the filing of this federal action. Additionally, the domestic action is set for trial in a matter of weeks. In contrast, this federal case is in its infancy, with no discovery having yet commenced. Because the domestic case has progressed considerably in comparison to this federal action,[24] this factor weighs strongly in favor of stay.

### 5. Which forum's substantive law governs the merits of the litigation.

This case involves no question of federal law, which makes this factor somewhat difficult to apply. Both the quantum meruit and fraud claims are state-law tort claims, presented to this federal court only as a matter of diversity jurisdiction. Because the alleged fraud and the services for which Brizendine seeks reimbursement occurred in the state of Kansas, this Court must apply Kansas state law.[25] Although Randall's argument seems to be that the state court could, and should, be the more appropriate jurisdiction for Brizendine's claims, he was not *required* to file in one jurisdiction over another under these facts. And, though the absence of a federal issue usually supports the stay of the

---

[23] *Foxfield Villa Assocs.,* 918 F. Supp. 2d at 1199 (citing *Ins. Fin. Corp. v. Evolution, Inc.,* No. 00–2386–KHV, 2000 WL 33314113, at *2 (D. Kan. Nov. 28, 2000).

[24] *Id*. at 1199-1200 (citing *Waddell & Reed Fin., Inc.,* 180 F. Supp. 2d at 1242).

[25] *See Atchison Casting Corp. v. Dofasco, Inc.,* 889 F. Supp. 1445, 1455 (D. Kan. 1995) (finding "the law of the state where the tort occurred applies").

federal case[26]—here, Kansas law applies to the federal claims, not California domestic law. Because the California court cannot fully decide the questions present in this litigation, and Kansas law (as applied by this Court) will govern this action, this factor weighs slightly against a stay of the federal case.

6.    **The adequacy of the state forum to protect the parties' rights.**

Although similar factual issues exist in both forums, and discovery will overlap, the state court will determine the value and ultimate ownership of the Property. However, the California court will not determine whether Brizendine was a victim of fraud or whether the value of his services is due to him on the quantum meruit claim. Therefore, this factor also weighs against a stay.

7.    **The vexatious or reactive nature of either action.**

Randall argues the timing and the nature of the federal case demonstrate it was filed in reaction to the divorce case, and is pursued solely as a method to harass her and circumvent the temporary orders of the domestic court. Although the Court acknowledges this is an unusual forum in which to bring claims of wrongful conduct occurring during the parties' cohabitation and/or marriage, the claims are couched in such a way that the Complaint does not appear spurious on its face. Although the nature of the claims appear reactive to the parties' underlying divorce action, the Court was satisfied

---

[26] *Springer*, 2015 WL 2449579, at *5 (citing *Jones v. Great Southern Life Ins. Co.,* 232 F.3d 901, 2000 WL 1375309 at *2 (10th Cir. 2000) (other internal citations omitted)).

by Brizendine's arguments regarding the validity of his claims.   Therefore, the Court finds this factor to be neutral to its analysis.

**Conclusion**

On reflection of the *Colorado River* factors, while three lean toward a stay of this action, two are neutral and two more weigh against a stay.  But the Court is not tasked with simply tallying hash marks on a rigid checklist; rather, it must view the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand."[27]  Ultimately, the Court focuses on the avoidance of duplicative litigation and preservation of resources—not only for the Court, but for the parties themselves.   The divorce case is deep into discovery and has progressed to the point of trial—a factor which weighs heavily in favor of stay.  Charging forward with the federal proceeding would create duplication of the Court and the parties' resources, particularly in discovery.

Of additional significance to this Court is that, when questioned at hearing, Brizendine failed to articulate any prejudice which could result from a relatively minor stay of this case.  A short stay appears beneficial, in order to permit the completion of discovery and the divorce trial to occur in California.  Permitting the conclusion of the California action allows the parties to move forward in this Court, having been armed with previous discovery and the knowledge of the final property division.  This should minimize necessary discovery and frame the ultimate damage claim in this case.  Taking all factors into consideration, and finding no prejudice to the parties, the Court finds the

---

[27] *D.A. Osguthorpe*, 705 F.3d at 1236 (citing *Moses H. Cone*, 460 U.S. at 21).

posture and factual basis of the California case provides an exceptional circumstance justifying a minimal stay of this case.

**IT IS THEREFORE ORDERED** that Defendant Jennifer Randall's Motion to Stay this case (**ECF No. 11**) is **GRANTED in part,** in that the case will be stayed only for an initial period of 90 days.

**IT IS FURTHER ORDERED** that Plaintiff Danny Brizendine shall file a Status Report with the Court on or before **June 30, 2017**, regarding the status of *Randall v. Brizendine,* 15FL-0626 (San Luis Obispo Co. Sup. Ct., Cal., filed Sept. 18, 2015), and specifically, any decision with regard to the Property in question.

**IT IS FURTHER ORDERED** that this case is set for a telephone status conference on **July 7, 2017, at 1:30 p.m**., to be initiated by the Court.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 5th day of April, 2017.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge